**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DARLENE POST, *et al.*,

               Plaintiffs,

    vs.

SOC, LLC, *et al.*,

               Defendants.

Case No.: 2:25-cv-00062-GMN-NJK

**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS (REDACTED VERSION)[1]**

Pending before the Court is the Motion to Dismiss, (ECF No. 29), filed by Defendants SOC, LLC, and SOC Nevada LLC (collectively "SOC").  Plaintiffs Estate of David Prince, Darlene Post, Estate of David Post, and Kipalee Prince filed a Response, (ECF No. 37), to which Defendant SOC filed a Reply, (ECF No. 44).  Further pending before the Court is the Motion to Seal Motion to Dismiss, (ECF No. 28), filed by Defendant SOC.  Plaintiffs did not file a Response.  Also pending before the Court is the Motion to Seal Response, (ECF No. 36), filed by Plaintiffs.  Defendant SOC did not file a Response.  Finally pending before the Court is the Motion to Seal Reply, (ECF No. 43), filed by Defendant SOC.  Plaintiff did not file a Response.

For the reasons discussed below, the Court GRANTS, in part, and DENIES, in part, SOC's Motion to Dismiss.

**I.**      **BACKGROUND**

This case arises from a fatal accident caused by an intoxicated driver that resulted in the deaths of David Post and David Prince. (Compl. ¶¶ 114–24, Ex. 1 to Pet. Removal, ECF No. 1-

---

[1] For security reasons, portions of this Order are redacted.  An unredacted version of this Order is available under seal on the docket.

1).  The accident occurred on a portion of Mercury Highway within the Nevada National Security Site ("NNSS"). (*Id.* ¶¶ 107-24).  Plaintiffs allege that the accident was caused by Prince Pollard, who, while driving northbound on Mercury Highway, collided head-on with Post and Prince. (*Id.* ¶ 119).  Post and Prince were both employed as miners by Mission Support and Test Services, LLC ("MSTS"), a private company that operated within the NNSS. (*Id.* ¶¶ 41, 43).  Pollard was employed by Amentum Services, Inc. ("Amentum"), which also operated within the NNSS. (*Id.* ¶¶ 24–25).

The NNSS is a large area of land in the State of Nevada that is used as an outdoor laboratory for nuclear testing. (*Id.* ¶ 14).  The NNSS is comprised of two primary areas that are utilized by the United States, the Department of Energy ("DOE"), and the Department of Defense ("DOD"): the initial entrance and most southern area of the NNSS ("Southern Area") is utilized by the DOE, and the more secure northern area ("Northern Area") is utilized by the DOD. (*Id.* ¶ 17).  Plaintiffs allege that Defendant SOC is responsible for controlling and managing access to the Southern Area, including manning a security gate at the initial entrance to the NNSS ("First Gate"), and manning several fixed post sites throughout the NNSS. (*Id.* ¶¶ 26–33).  While DOD agents, employees, and private contractors were permitted to drive their civilian vehicles in the Southern Area, only United States Air Force ("USAF") vehicles are permitted to enter the Northern Area. (*Id.* ¶ 23).

On the night of the accident, Plaintiffs allege the following facts: Pollard, who worked in the Northern Area, was seen consuming alcohol at a bar within the Northern Area. (*Id.* ¶ 96). He exited the Northern Area using his USAF vehicle, parked that vehicle in the Southern Area, and used his civilian vehicle to exit the NNSS and drive to Terrible's Casino in Indian Springs, Nevada. (*Id.* ¶¶ 97–99).  Several hours later, he returned to the NNSS and attempted to enter the First Gate in his civilian vehicle. (*Id.* ¶ 102).  A guard employed by Defendant SOC performed a standard security check, which involved checking Pollard's identification and performing a

sweep of the car to ensure there were no other occupants. (*Id.* ¶ 103).  Plaintiffs allege that Pollard was clearly intoxicated, but was nonetheless permitted to enter the Southern Area, where he switched from his civilian vehicle to his USAF vehicle and began to drive northbound on Mercury Highway. (*Id.* ¶¶ 105–109).  The accident occurred shortly after.

Plaintiffs initially filed this action in the Eighth Judicial District Court for Clark County, Nevada, asserting six claims: (1) negligence against SOC and SOC Doe Guard, (2) ostensible agency/vicarious liability for negligent acts of SOC Doe Guard against SOC, (3) negligent performing of undertaking against SOC and SOC Doe Guard, (4) ostensible agency/vicarious liability for negligent performance of undertaking of SOC Doe Guard, (5) wrongful death under Nevada Revised Statute ("NRS") 41.085 against SOC and SOC Doe Guard, and (6) negligent hiring, training, and supervision against SOC. (*Id.* ¶¶ 127–172).  Plaintiff Darlene Post asserts a claim for loss of consortium against SOC, (*id.* ¶¶ 173–179), and Plaintiff Kipalee Prince asserts a separate claim for loss of consortium against SOC. (*Id.* ¶¶ 180–186).

Defendant SOC thereafter removed the case to this Court, (*see* Pet. Removal, ECF No. 1), and now moves to dismiss all claims asserted against it both for lack of subject matter jurisdiction and for failure to state a claim. (*See generally* Mot. Dismiss, ECF No. 29).

## II.     LEGAL STANDARD

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1).  A Rule 12(b)(1) motion tests whether a complaint alleges grounds for federal subject matter jurisdiction.  A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of

establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

**B. Motion to Dismiss for Failure to State a Claim**

Dismissal is appropriate under FRCP 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, FRCP 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

///

///

**C. Motion to Seal**

The public has a presumptive right to inspect and copy judicial records and documents. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Consequently, a party seeking to seal a judicial record under Federal Rule of Civil Procedure 26(c) "bears the burden of overcoming this strong presumption." *Id.* The Ninth Circuit has recognized that two different standards may apply when a request to seal a document is made in connection with a motion—namely the "compelling reasons" standard or the "good cause" standard. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016). The compelling reasons standard applies to any sealing request made in connection with a motion that is "more than tangentially related to the merits of a case." *Id.* at 1099, 1101. Under the good cause standard, a party requesting sealing must show that, for "each particular document" it seeks to seal, "prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). Under the compelling reasons standard, a court may seal a record only if it finds "compelling reasons" to support such treatment and articulates "the factual basis for its ruling, without relying on hypothesis or conjecture." *Ctr. for Auto Safety*, 809 F.3d at 1096–97. Compelling reasons exist when "such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1097 (internal quotations and citations omitted).

The compelling reasons must be "supported by specific factual findings," that outweigh "the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178–79 (internal quotations and citations omitted). The Ninth Circuit has rejected efforts to seal documents under the "compelling reasons" standard based on "conclusory statements about the contents of the documents–that they are confidential" and that, in general, their disclosure would be

harmful to the movant. *Id*. at 1182.  Furthermore, any "requests to seal documents must be 'narrowly tailored' to remove from the public sphere only the material that warrants secrecy." *Florence v. Cenlar Fed. Sav. & Loan*, No. 2:16-cv-00587, 2017 WL 1078637, at *2 (D. Nev. Mar. 20, 2017) (internal citations omitted).

## III.    **DISCUSSION**

SOC moves to dismiss all claims asserted against them for lack of subject matter jurisdiction under FRCP 12(b)(1), or alternatively, for failure to state a claim under FRCP 12(b)(6). (Mot. Dismiss 5:26–6:5).

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

SOC contends that this Court lacks subject matter jurisdiction over the Complaint because Plaintiff's claims are: (1) precluded by the doctrine of derivative sovereign immunity; (2) non-justiciable under the political question doctrine, and (3) barred by the federal enclave doctrine. (*Id*.).  The Court addresses each of SOC's jurisdictional arguments in turn.

### 1. Derivative Sovereign Immunity

SOC first argues that, as a government contractor acting within the scope of a validly conferred government contract, it is entitled to derivative sovereign immunity under *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940), and its progeny. (Mot. Dismiss 7:11–21).  SOC also appears to argue that it is entitled to discretionary function immunity under the Federal Tort Claims Act ("FTCA"). (*Id.* 7:24–9:18).  Plaintiffs oppose both theories of immunity, arguing that SOC is not entitled to derivative sovereign immunity because it exercised discretion in designing security programs used at the NNSS, and that SOC does not come within the discretionary function exception to the FTCA's waiver of sovereign immunity because it is an independent contractor rather than a federal agency or employee. (Resp. 5:9–10:2, ECF No. 37).

As an initial matter, it is unclear whether *Yearsley* immunity operates as a jurisdictional

bar. *See Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 646–47 (6th Cir. 2015) (discussing circuit split on the issue of whether *Yearsley* immunity is jurisdictional). Neither party has identified controlling Ninth Circuit precedent holding that *Yearsley* immunity is or is not jurisdictional. If *Yearsley* immunity is not jurisdictional, SOC's Motion would be analyzed under FRCP 12(b)(6), and thus the Court's review would be limited to the face of Plaintiff's Complaint. *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Because SOC submits several exhibits not contained within Plaintiff's complaint, the Court would deny SOC's Motion with respect to *Yearsley* immunity for raising matters not properly considered under FRCP 12(b)(6). *See Clover v. Camp Pendleton & Quantico Housing LLC*, 525 F. Supp. 3d 1140, 1141 (S.D. Cal. 2021). If *Yearsley* immunity is jurisdictional, the Court could consider materials outside the pleadings. *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008) (citing *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). As discussed below, the Court concludes that SOC's *Yearsley* immunity theory would be denied in either scenario.

The United States enjoys sovereign immunity from suit, unless it has expressly waived that immunity. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). In *Yearsley*, the Supreme Court recognized that, subject to some limitations, the acts of the United States' agents are also acts of the United States itself. That case involved a claim asserted against a federal contractor who damaged the plaintiff's land while carrying out the terms of its contract with the government. 309 U.S. 19–20. It was undisputed that the contractor's work "was all authorized and directed by the Government of the United States," and that the work was performed pursuant to an act of Congress. *Id.* at 20. Because the contractor was carrying out Congress' directive under validly conferred authority, the contractor could not be liable. *Id.* at 21.

Assuming, *arguendo*, that *Yearsley* immunity is jurisdictional, it cannot attach to SOC here because the exhibits submitted by SOC with its Motion to Dismiss make clear that SOC had a considerable amount of discretion in carrying out its duties under its contract with the government. The Ninth Circuit has explained that *Yearsley* immunity is limited to cases in which the contractor had no discretion and was following government specifications completely. *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (citing *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008)). In *Cabalce*, defendants had contracted with the government to store and destroy fireworks that had been seized by the federal government. 797 F.3d at 724. When some of the seized fireworks accidentally exploded, killing several employees, the decedents' representatives sued the contracting defendants for negligence. *Id.* However, because the contracting defendants had designed a destruction plan for the fireworks "without government control or supervision," the *Cabalce* court concluded that they were not entitled to *Yearsley* immunity. *Id.* at 732.

Upon review of the exhibits submitted by SOC, the Court concludes that SOC enjoyed a similar degree of discretion here. First,

████████████████████████████████████████████████████████

████████████████████

Like the contractors in *Cabalce*, SOC was responsible for designing an operations plan "without government control or supervision." 797 F.3d at 732.  While SOC contends that these procedures were subject to approval by the government, it fails to identify language in any of its submitted exhibits establishing a requirement of government approval. (Reply 8:2–12, ECF No. 44).  ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

Under *Cabalce*, however, *Yearsley* immunity attaches only when the contractor exercises *no* discretion of its own. *See Clover*, 525 F. Supp. 3d at 1143.  Accordingly, regardless of whether *Yearsley* is jurisdictional or not, SOC cannot benefit from it here.

Indeed, SOC itself appears to contend that it is entitled to discretionary function immunity under the FTCA. (Mot. Dismiss 8:22–9:18).  28 U.S.C. § 2680 sets out exceptions to the FTCA's waiver of sovereign immunity for tort suits.  § 2680(a) exempts from that waiver any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a).  SOC's attempt to locate its services within that exception further confirms that they exercised discretion in carrying out their duties under the contract.[2]

In any case, as Plaintiffs point out, SOC is not entitled to discretionary function immunity under the FTCA because § 2680(a) applies only to federal agencies or government employees; here, SOC is an independent contractor. 28 U.S.C. § 2680(a).

///

---

[2] In its Reply, SOC attempts to disclaim this argument. (*See* Reply 4:17–18).  However, it is difficult to square that disclaimer with the language of their Motion to Dismiss. (*See* Mot. Dismiss 8:21 ("Discretionary Function Immunity Extends to Contractors") (emphasis removed)).

### 2. Political Question Doctrine

Next, SOC contends that Plaintiff's claims are non-justiciable under the political question doctrine because they "necessarily require the Court to inquire into the reasonableness of sensitive national security decisions undertaken to protect nuclear weapons." (Mot. Dismiss 11:13–18). In response, Plaintiffs argue that their claims require the Court to inquire into SOC's performance of contractual obligations, not the wisdom of governmental policy decisions, and thus their claims are justiciable. (Resp. 10:5–15:7).

The political question doctrine serves to prevent federal courts from improperly intruding on certain policy choices and value judgments that are constitutionally committed to Congress or the executive branch. *See Japan Whaling Ass'n v. American Cetacean Soc.*, 478 U.S. 221, 230 (1986). In determining whether a lawsuit raises a political question, courts must undertake "a discriminating analysis of the question posed, in terms of the history of its management by the political branches, of its susceptibility in the light of its nature and posture of the specific case, and of the possible consequences of judicial action." *Baker v. Carr*, 369 U.S. 186, 211–12 (1962). To make that determination, *Baker* requires courts to consider whether each claim presents:

(1) a textually demonstrable constitutional commitment of the issue to a coordinate political department; or

(2) a lack of judicially discoverable and manageable standards for resolving it; or

(3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or

(4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or

(5) an unusual need for unquestioning adherence to a political decision already made; or

(6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. at 217; *see Alperin v. Vatican Bank*, 410 F.3d 532, 544 (9th Cir. 2005) ("[T]hese tests are more discrete in theory than in practice, with the analyses often collapsing into one another.").

The core dispute between the parties here is whether, in analyzing Plaintiff's claims, the Court would have to inquire into the reasonableness of national security decisions taken by the government, or merely inquire into SOC's performance of its contractual duties. (Mot. Dismiss 11:13–18); (Resp. 10:5–15:7). The dividing line recognized by cases in this Circuit is whether a court must examine government decisions or decisions made by a contractor in the performance of their duties. *See Bixby v. KBR, Inc.*, 748 F. Supp. 2d 1224, 1238–39 (D. Or. 2010) (collecting cases contrasting findings of justiciability). Where a government contractor lacked any discretion in the provision of services under the contract, courts are more likely to find a plaintiff's tort claims arising out of the provision of those services non-justiciable because they essentially require inquiry into the wisdom of *governmental decisions. Id.* Conversely, where the government contractor possessed discretion in carrying out their contractual duties, courts are more likely to find similar claims justiciable because they necessitate an inquiry into the reasonableness of the *contractor's performance* of contractual duties rather than the propriety of the government's policy decisions. *Id.* at 1238 (collecting cases).

For example, in *Saldana v. Occidental Petroleum Corp.*, the Ninth Circuit concluded that the plaintiff's claims were not justiciable because they were inextricably bound to the question of whether the government's decision to fund the Colombian National Army's 18th Brigade was proper. 774 F.3d 544, 552 (9th Cir. 2014). In *Bixby*, the district court found claims against a government contractor who failed to advise plaintiffs of hazardous chemicals

at their work site justiciable because "the matter fundamentally at issue [was the] defendants' performance of [their] contractual obligations . . . rather than the advisability of any governmental policy decision." 748 F. Supp. 2d at 1239.

Here, the Court concludes that Plaintiffs' claims are justiciable because they require an inquiry only into the reasonableness of SOC's performance of its duties under the contract. As explained above, SOC possessed significant discretion in operating security posts at the NNSS. (*See* Section (III)(A)(1)). The core factual question presented by Plaintiffs' claims—whether SOC and its employee Guard were negligent in admitting an allegedly intoxicated Pollard into the NNSS—demands inquiry into the reasonableness of *SOC procedures*, not governmental policy decisions.

In characterizing this case as inextricably intertwined with "sensitive national security decisions undertaken to protect nuclear weapons," SOC paints with too broad a brush. (Mot. Dismiss 11:14–18). The government did not dictate the security procedures that SOC implemented at NNSS security posts, but rather afforded them flexibility to design those procedures themselves. (*See* PWS at 6–12, Ex. 2 to Mot. Dismiss). Mere proximity to a nuclear weapons site is not sufficient to deprive courts of jurisdiction over judicially manageable tort claims. Further, the cases cited by SOC in support of its argument are distinguishable. (*See* Mot. Dismiss 13:1–14). Each of these cases involved factual situations in which the government possessed a meaningful amount of control. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1281–83 (11th Cir. 2009) (plaintiff's claims for negligent operation of fuel tanker by contractor's employee non-justiciable because military dictated factors leading to the accident including amount of fuel carried and route of the tanker); *Whitaker v. Kellogg Brown & Root Servs., Inc.*, 444 F. Supp. 2d 1277 (M.D. Ga. 2006) (same); *Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486 (C.D. Cal.) (plaintiff's claims non-justiciable because they required court to inquire into military strategy); *Zukerbraun v. Gen.*

*Dynamics Corp.*, 755 F. Supp. 1134 (D. Conn. 1990) (plaintiff's claims non-justiciable because they required court to inquire into "the appropriateness of the rules of engagement and standing orders").

Because Plaintiffs' claims require the Court to examine the propriety of SOC procedures, this case does not involve "a textually demonstrable commitment of the issue to a coordinated political department," nor an "impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion." *Baker*, 368 U.S. at 217. Accordingly, the Court declines to dismiss this case as non-justiciable under the political question doctrine.

### 3.  Federal Enclave Doctrine

SOC next contends that Plaintiffs' claims are barred by the federal enclave doctrine. (Mot. Dismiss 16:10–17:23).  Article 1, Section 8, Clause 17 of the United States Constitution establishes the principle that federal law applies on federal enclaves:

> Congress shall have Power ... [t]o exercise exclusive Legislation in all Cases whatsoever, over such District[s] ... as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.

U.S. CONST. art. 1, § 8, cl. 17.  As this clause has been interpreted, when the federal government purchases state land with the consent of the state legislature, or the state legislature cedes the land voluntarily, "any law existing [on that land] must derive its authority and force from the United States and is for that reason federal law." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 749 (9th Cir. 2022) (quoting *Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1962)) (internal quotations omitted).  Thus, unless an exception applies, any conduct on a federal enclave is governed by federal law. *Id.*  However, preexisting state law not inconsistent with federal policy becomes federal law and is applicable as well. *Cooper v. Southern*

*California Edison Co.*, 170 Fed. Appx. 496, 497 (9th Cir. 2006) (citing *Paul v. United States*, 371 U.S. 245, 263–64 (1963)).

Thus, the first step in the Court's inquiry is determining whether the conduct underpinning Plaintiffs' claims occurred on a federal enclave. It is not disputed between the parties that the NNSS is a federal enclave, and indeed, another Judge in his District has recognized that NNSS is a federal enclave. (Mot. Dismiss 16:10–17:23); (*see* Resp. 15:9–17:18); *see Estate of Graves v. Nye Cnty.*, No. 2:20-cv-02359-CDS-DJA, 2023 WL 4747404, at *5 (D. Nev. July 24, 2023). It is also not disputed between the parties that the conduct complained of here occurred within the NNSS. (*See* Compl. ¶¶ 96–126, Ex. 1 to Pet. Removal); (Mot. Dismiss 16:10–17:23).

Having determined that the NNSS is a federal enclave, the Court next determines whether the state law on which Plaintiffs base their claims was enacted prior to the date on which the NNSS became a federal enclave. If it was, then it becomes part of the "federal law" in effect within the federal enclave, and Plaintiff's state law claims are not barred. *Cooper*, 170 Fed. Appx. at 497. If it was enacted after the NNSS became a federal enclave, Plaintiffs' claims are barred. *Id.* SOC argues that the NNSS became a federal enclave in 1864 when Congress passed the Nevada Admission Acts, under which "the people inhabiting [Nevada] do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within said territory, and that the same shall be and remain at the sole and entire disposition of the United States." (Mot. Dismiss 17:2–14) (citing Nevada Admission Acts at 5, Ex. 4 to Appendix of Exhibits Vol. II, ECF No. 30-4). Thus, SOC contends, because the state law on which Plaintiffs base their claims did not exist prior to 1864, Plaintiffs' claims are barred. (*Id.* 17:15–23).

However, the date on which the NNSS became a federal enclave is not as clear as SOC makes it out to be. Indeed, in *Estate of Graves*, Judge Silva declined to recognize the exact

date on which the NNSS became a federal enclave, stating only that, "at latest," the NNSS would have become a federal enclave after the passage of the National Nuclear Security Administration Act in 2000. 2023 WL 4747404, at *5.  At bottom, SOC's argument relies on the assumption that, at the time the Nevada Admission Acts were passed, the NNSS was "unappropriated public land." (Nevada Admission Acts at 5, Ex. 4 to Appendix of Exhibits Vol. II).

Historical evidence casts doubt on the validity of this assumption.  The NNSS was formerly the Nevada Test Site ("NTS"), which was created in 1950 when President Harry Truman "authorized a 680-square mile section of the Nellis Air Force Gunnery and Bombing Range in Southern Nevada" for use as a nuclear testing site. Our History, Nevada National Security Site (Mar. 19, 2026), https://nnss.gov/about-the-nnss/nnss-history/.[3]  Nellis Air Force Base, originally named the Las Vegas Army Air Field, opened in 1941. Continuing Evolution: 75 Years of Nellis History, Nellis Air Force Base (Mar. 19, 2026), https://www.nellis.af.mil/News/Article/664716/continuing-evolution-75-years-of-nellis-history/.  However, prior to 1941, the land on which Nellis Air Force Base stands was home to the Las Vegas Airport, a privately owned and operated business that opened in 1929. Id.  In 1941, the same year that the Las Vegas Army Air Field opened, the city of Las Vegas purchased the airfield, and thereafter leased the airfield to the U.S. Army. Id.

The above is irreconcilable with SOC's contention that the land on which the NNSS sits has been a federal enclave since 1864.  While the Court makes no finding regarding the precise date on which the NNSS became a federal enclave, at earliest, the land on which it sits became a federal enclave in 1950.  Here, all of Plaintiff's state law claims were recognized under Nevada law prior to 1950. See Sherman v. Southern Pac. Co., 111 P. 416, 420 (Nev. 1910)

---

[3] Under Federal Rule of Evidence 201, the Court may take judicial notice of "official information posted on a governmental website, the accuracy of which [is] undisputed." Arizona Libertarian Party v. Reagan, 798 F.3d 723, 727 n. 3 (9th Cir. 2015) (citations omitted).

(discussing tort of negligence); *Forrester v. Southern Pac. Co.*, 134 P. 753, 767 (Nev. 1913) (discussing vicarious liability of principal for agent's negligence); *McDonough v. Mayor, etc., of New York City*, 6 Nev. 90, 93 (1870) (discussing tort of negligent performance of undertaking); *Nordyke v. Pastrell*, 7 P.2d 598, 599 (Nev. 1932) (discussing action for wrongful death); *Peck v. Woomack*, 192 P.2d 874, 882 (Nev. 1948) (discussing claim for negligent hiring); *Anderson v. McGill Club*, 266 P. 913, 915 (Nev. 1928) (discussing claim for loss of consortium).

Accordingly, because Plaintiffs' claims are based on Nevada state law which existed prior to 1950, that law is a part of the federal law operative on the federal enclave, and Plaintiffs' claims are not barred.  The Court thus DENIES SOC's Motion to Dismiss for lack of subject matter jurisdiction.

## B. Motion to Dismiss for Failure to State a Claim

The Court next turns to SOC's Motion to Dismiss for failure to state a claim under FRCP 12(b)(6).  SOC moves to dismiss all of Plaintiffs' claims, arguing that the factual allegations pled fail to state a claim on which relief can be granted. (*See* Mot. Dismiss 17:25–24:18).  In response, Plaintiffs contend that they have pled sufficient factual allegations for each claim, and in the alternative request leave to amend. (*See* Resp. 17:22–24:20).  The Court addresses each of Plaintiffs' claims in turn.

### 1. Negligence

To prevail on a negligence claim, a plaintiff must show: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages. *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009).  Under common law principles, no duty it owed to control the dangerous conduct of another or to warn others of the dangerous conduct. *Id.* (citing *Mangeris v. Gordon*, 580 P.2d 481, 483 (Nev. 1978)).  However, an affirmative duty to aid others arises when (1) a special relationship exists between the parties or

between the defendant and the identifiable victim, and (2) the harm created by the defendant's conduct is foreseeable. *Id.* (citing *Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001)).

SOC argues that Plaintiff has failed to plausibly allege duty, breach, and causation. (Mot. Dismiss 18:17–19:25). With respect to the duty element, SOC argues that Plaintiffs have failed to plead factual allegations establishing a special relationship between SOC and the victims, Prince and Post. (*Id.* 19:10–12). In response, Plaintiffs contend that they have plausibly alleged a special relationship, pointing to Prince and Post's status as "government-contractors-employees who worked within the NNSS's secured premises." (Resp. 19:11–14 (citing Compl. ¶¶ 41, 43, 47–48, Ex. 1 to Pet. Removal)).

Under Nevada law, the "pivotal factor" in the determination of liability arising from certain relationships is "the element of control." *Scialabba v. Brandise Const. Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996). As the Nevada Supreme Court explained in *Scialabba*, "since the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other, a duty should be imposed upon the one possessing control (and thus the power to act) to take reasonable precautions to protect the other one from assaults by third parties which, at least, could reasonably have been anticipated." *Id.* There, the Nevada Supreme Court found that a construction contractor exercised sufficient control over an apartment complex to give rise to a special relationship between the contractor and a tenant. *Id.* at 931.

Here, Plaintiffs plausibly allege that SOC exercised a similar level of control over the NNSS. Plaintiffs' Complaint alleges that "SOC secured, controlled, and managed access to travel" within the NNSS, and "exercised possession, control, management, and supervision over the safety of the NNSS premises." (Compl. ¶¶ 26–28, Ex. 1 to Pet. Removal). Further, Plaintiffs have plausibly alleged that the harm created by SOC's conduct was foreseeable. Specifically, Plaintiffs allege that SOC had in the past addressed alcohol related issues,

including removing intoxicated drivers from NNSS roadways. (*Id.* ¶¶ 35–37). Further, as Plaintiffs argue in their Response, accidents caused by intoxicated drivers are "all too predictable." (Resp. 20:23–26 (quoting *Coty v. Washoe Cnty.*, 839 P.2d 97, 103 (Nev. 1992) (J. Rose, J. Springer, dissenting))). Taking those allegations to be true, as the Court must at the motion to dismiss stage, the Court finds that Plaintiffs have plausibly alleged a special relationship between SOC and Prince and Post sufficient to impose a duty of reasonable care.

Second, Plaintiffs have plausibly alleged a breach of that duty. While SOC argues that Plaintiffs only allege breach as a legal conclusion, Plaintiffs' Complaint does allege factual allegations establishing breach. (Mot. Dismiss 19:6–10). Specifically, Plaintiff alleges that SOC acted unreasonably "by permitting Pollard, an individual exhibiting overt signs of impairment, to access the [NNSS] and drive a motor vehicle into the NNSS." (Compl. ¶ 129, Ex. 1 to Pet. Removal). Especially given Plaintiffs' other allegations that SOC had addressed alcohol related issues in the past, (*see id.* ¶¶ 34–39), Plaintiffs' Complaint plausibly alleges that SOC breached its duty of reasonable care.

Third, Plaintiffs have plausibly alleged that SOC's breach was both the but-for and proximate cause of Post and Prince's deaths. Proximate cause is defined as "any cause which in natural (foreseeable) and continuous sequence unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred." *Clark Cnty. School Dist. v. Payo*, 403 P.3d 1270, 1279 (Nev. 2017) (quoting *Goodrich & Pennington Mortg. Fund, Inc. v. J.R. Woolard, Inc.*, 101 P.3d 792, 797 (Nev. 2004)). SOC argues that Plaintiffs fail to plausibly allege proximate cause because there was a "break in causation," pointing to the fact that the accident occurred over an hour after Pollard was admitted into the NNSS. (Mot. Dismiss 19:18–25). The Court disagrees. Plaintiffs have alleged that Pollard was visibly intoxicated, and that the potential for harm caused by his intoxication was foreseeable to SOC. (*See* Compl. ¶¶ 36–38). Ultimately, proximate cause is a

question of fact for the jury. *See Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012). At this stage in the litigation, Plaintiffs have plausibly pled that SOC's breach was the but-for and proximate cause of Post and Prince's deaths. Accordingly, the Court DENIES SOC's Motion to Dismiss this claim.

### 2. Negligent Performance of Undertaking

For state claims of negligent performance of an undertaking, Nevada follows the Restatement (Second) of Torts. *Olvera v. Shafer*, No. 2:14-cv-01298-GMN-NJK, 2015 WL 1960736, at *3 (D. Nev. Apr. 29, 2015) (citing *Wiseman v. Hallahan*, 945 P.2d 945, 947–48 (Nev. 1997)). The Restatement provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 323 (1977). SOC argues that Plaintiffs have failed to plead factual allegations establishing that SOC undertook to protect Plaintiffs from the harm of an intoxicated driver. (Mot. Dismiss 20:1–13). But Plaintiffs allege that "SOC's duties included . . . removing drunken drivers from NNSS roadways." (Compl. ¶ 36, Ex. 1 to Pet. Removal). It is plausible that SOC's alleged failure to exercise care in undertaking those duties would increase the risk of harm to other persons within the NNSS. Thus, the Court DENIES SOC's Motion to Dismiss this claim.

### 3. Negligent Hiring, Training, Retention, and Supervision

Under Nevada law, to establish a claim for negligent hiring, training, retention, or supervision of employees, a plaintiff must show: (1) a duty of care defendant owed the plaintiff; (2) breach of that duty by hiring, training, retaining, and/or supervising an

employee even though defendant knew, or should have known, of the employee's dangerous propensities; (3) the breach was the cause of plaintiff's injuries; and (4) damages. *Freeman Expositions, LLC v. Eighth Jud. Dist. Ct. in and for Cnty. of Clark*, 520 P.3d 803, 811 (Nev. 2022).  "[An] employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996). Plaintiffs must specifically show "how [the] employer violated its duty." *Reece v. Republic Servs., Inc.*, No. 2:10-cv-00114-GMN-RJJ, 2011 WL 868386, at *11 (D. Nev. Mar. 10, 2011).

SOC argues that Plaintiffs fail to plead sufficient factual allegations to plausibly state a claim for negligent hiring. (Mot. Dismiss 21:4–20).  The Court agrees.  While Plaintiffs allege that SOC was aware of Pollard's previous conduct issues with alcohol, (*see* Compl. ¶¶ 85, 92–95), they fail to allege why the SOC Doe Guard who operated the First Gate to the NNSS was not fit for their position or inadequately trained. (*See generally id.*).  While Plaintiffs appear to imply that SOC failed to train the Doe Guard regarding Pollard and other Amentum employees, Plaintiffs do not allege with specificity that SOC's training was inadequate. (*Id.* ¶ 95).  Accordingly, the Court GRANTS SOC's Motion to Dismiss this claim.  However, because amendment would not be futile, the Court grants Plaintiffs leave to amend to cure this deficiency.

### 4.  Vicarious Liability for Negligent Acts of SOC Doe Guard

Plaintiffs assert standalone claims against SOC for vicarious liability based on both their negligence claim and their negligent performance of undertaking claim. (*Id.* ¶¶ 134–38, 150–54).  As SOC argues, "[v]icarious liability is not an independent cause of action, but rather a theory assigning liability." *Mitschke v. Gosal Trucking, LDS*, No. 2:14-cv-01099-JCM-VCF, 2014 WL 5307950, at *2 (D. Nev. Oct. 16, 2014) (citing *Okeke v. Biomat USA, Inc.*, 927 F.

Supp. 2d 1021, 1028 (D. Nev. 2013)).  Accordingly, the Court GRANTS SOC's Motion to Dismiss this claim with prejudice.  This does not foreclose an argument from Plaintiffs later in the litigation that SOC is vicariously liable on any of the remaining claims.

### 5.  Plaintiffs' Claim for Wrongful Death Under NRS 41.085(2)

Under NRS 41.085(2), when the death of a person "is caused by the wrongful act or neglect of another," the heirs or personal representatives of a decedent may bring a claim for damages against the person "who caused the death." Nev. Rev. Stat. § 41.085(2).  SOC argues that this claim should be dismissed because Plaintiffs fail to allege factual allegations supporting a negligent or wrongful act. (Mot. Dismiss 23:13–24:6).  However, as explained above, Plaintiffs have plausibly pled a claim for negligence against SOC and SOC Doe Guard, the same Defendants named in Plaintiff's wrongful death claim. (*See* Section (III)(B)(1)); (Compl. 17:26, Ex. 1 to Pet. Removal).  Accordingly, the Court DENIES SOC's Motion to Dismiss this claim.

### 6.  Plaintiffs' Claims for Loss of Consortium

The final claims brought by Plaintiffs are two claims for loss of consortium, one brought by Darlene Post, and the other brought by Kipalee Prince. (Compl. ¶¶ 173–86, Ex. 1 to Pet. Removal).  SOC again argues that these claims must be dismissed because they depend on Plaintiff's claims for negligence, negligent performance of undertaking, and negligent hiring, training, retention, or supervision, which SOC contend fail. (Mot. Dismiss 24:9–18).  However, because the Court denies SOC's Motion to Dismiss with respect to Plaintiffs' claims for negligence and negligent performance of undertaking, Plaintiffs' claims for loss of consortium survive.  Accordingly, the Court DENIES SOC's Motion to Dismiss these claims.

### C. The Parties' Motions to Seal

The Court next turns to the three Motions to Seal filed by the parties.  SOC seeks to seal its Motion to Dismiss, (ECF No. 29), Appendix of Exhibits Vol. I, (ECF No. 30), and its Reply,

(ECF No. 44). (SOC First Mot. Seal 7:12–14, ECF No. 28); (SOC Second Mot. Seal 5:5–6, ECF No. 43).  Plaintiffs seek to file their Response to SOC's Motion to Dismiss, (ECF No. 37), under seal. (Plaintiffs' Mot. Seal 1:21–27, ECF No. 36).

Each Motion seeks to seal the underlying filing because it contains references to information deemed confidential by the National Nuclear Security Administration ("NNSA"). (SOC First Mot. Seal 3:2–3); (Plaintiffs' Mot. Seal 3:4–7); (SOC Second Mot. Seal 4:15–17). SOC argues that good cause exists to seal briefing and exhibits on their Motion to Dismiss because the parties stipulated to a protective order under which the parties agree to file information labeled "Controlled Unclassified Information" ("CUI") by the NNSA under seal. (SOC First Mot. Seal 5:4–11); (*see* Stip. Regarding the Confidentiality of Documents, ECF No. 27).  However, parties may not rely on a stipulated protective order to justify sealing documents filed in the record under seal. *Heath v. Tristar Products, Inc.*, No. 2:17-cv-02869-GMN-PAL, 2019 WL 12311995, at *1 (D. Nev. Apr. 17, 2019) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1133 (9th Cir. 2003)).

Because the Motions to Seal relate to SOC's Motion to Dismiss, which is "more than tangentially related to the merits of the case," the "compelling reasons" standard applies. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099, 1101 (9th Cir. 2016).  Here, the Court finds that national security interests are a compelling reason for filing the unredacted versions of the briefing and exhibits on the Motion to Dismiss under seal.[4] *See, e.g.*, *United States ex re. Kelly v. Serco, Inc.*, No. 11-cv-2975-WQH-RBB, 2014 WL 12675246, at *4 (S.D. Cal. Dec. 22, 2014).  The Court finds that the documents contain sensitive information about

---

[4] While the briefing on the Motion to Dismiss was all initially filed under seal, the Motion to Dismiss, (ECF No. 29), Exhibit 4 to Motion to Dismiss, (ECF No. 30-4), Exhibit 5 to Motion to Dismiss, (ECF No. 30-5), and Plaintiff's Response, (ECF No. 37), contained redactions.  Following an Order from this Court, the parties filed unredacted version of those documents under seal. (*See* Order, ECF No. 46).  The unredacted version of the Motion to Dismiss is filed under seal at ECF No. 48, the unredacted copies of Exhibits 4 and 5 are filed under seal at ECF No. 50, and the unredacted copy of Plaintiff's Response is filed at ECF No. 52.

security procedures at the NNSS, including the makeup and design of badges used by contractors working within the NNSS. (*See, e.g.*, SGO-3 DOE Security Badge Information, Ex. 4 to Appendix of Exhibits Vol. I, ECF No. 30-4).

Accordingly, the Court GRANTS SOC's Motion to Seal the Motion to Dismiss and Appendix of Exhibits Vol. I, Plaintiffs' Motion to Seal Response to Motion to Dismiss, and SOC's Motion to Seal Reply. However, under Local Rule IA 10-5, the Court orders that the redacted versions of these documents be filed publicly on the docket.[5]

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that SOC's Motion to Dismiss, (ECF No. 29), is **GRANTED, in part, and DENIED, in part.**  Plaintiffs' claim for negligent hiring, training, retention, or supervision is dismissed without prejudice and with leave to amend.

**IT IS FURTHER ORDERED** that SOC's Motion to Seal Motion to Dismiss, (ECF No. 28), is **GRANTED.**  The Clerk of Court is kindly directed to file the redacted versions of SOC's Motion to Dismiss, (ECF No. 29), and Exhibits 4 and 5, (ECF Nos. 30-4, 30-5), publicly on the docket.

**IT IS FURTHER ORDERED** that SOC must file a redacted version of its Reply, (ECF No. 44), publicly on the docket no later than seven days from the entry of this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Seal Response to Motion to Dismiss, (ECF No. 36), is **GRANTED.**

///

///

///

///

---

[5] The redacted versions of the Motion to Dismiss, (ECF No. 28), and Exhibits 4 and 5, (ECF Nos. 30-4, 30-5), were filed under seal but never filed publicly on the docket. The redacted version of Plaintiff's Response, (ECF No. 51), was filed publicly. Finally, no redacted version of SOC's Reply was ever filed.

**IT IS FURTHER ORDERED** that SOC's Motion to Seal Reply, (ECF No. 43), is **GRANTED.**

**DATED** this  27  day of March, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court